# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00334-CV

**M-E Engineers, Inc., and Allen Y. Tochihara, Appellants**

**v.**

**City of Temple, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 245,397-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## O P I N I O N

This is an interlocutory appeal from a district court order denying a motion to dismiss under chapter 150 of the civil practice and remedies code, which governs suits against engineers, architects, and certain other licensed professionals, as well as their firms. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 150.001-.002 (West 2011). The issues presented concern the sworn "certificate of merit" that a plaintiff must file as a prerequisite to asserting claims governed by chapter 150. *See id.* § 150.002. In particular, appellants urge that the district court's order was predicated upon a misconstruction or misapplication of chapter 150's current requirements governing the affiant's qualifications and the types of facts to which the affiant must attest. Concluding otherwise, we will affirm the district court's order denying the motion to dismiss.

## BACKGROUND

The underlying litigation arose from the construction of a new police headquarters building for the City of Temple. The City hired a general contractor and an architect, and the

architect, in turn, contracted with M-E Engineers, Inc., to provide mechanical, electrical, and plumbing engineering services for the project. Thereafter, M-E provided its services on the project through Allen Y. Tochihara, a licensed professional engineer and M-E principal. Subsequently, complaining of various problems in the building's heating, ventilation, and air conditioning (HVAC) system, the City sued the general contractor, the architect, M-E, and Tochihara, seeking damages under negligence and contract theories predicated on alleged errors or omissions in the system's design and construction. As required by chapter 150 of the civil practice and remedies code, the City attached to its original petition a sworn certificate of merit from a licensed professional engineer, Bill M. Long, attesting to the HVAC design and construction deficiencies made the basis of the City's suit and opining that "these errors and omissions were caused by a lack of supervision and enforcement of the contract documents by the Engineer, which constitutes negligence in the practice of engineering." *See id.* § 150.002(a)-(b). Long defined and identified "the Engineer" as Tochihara. However, he did not explicitly mention Tochihara's firm, M-E, anywhere in the certificate.

Both Tochihara and M-E filed a motion to dismiss, asserting that Long's certificate failed to satisfy chapter 150's requirements. *See id.* § 150.002(e). Prior to the hearing on appellants' dismissal motion, the City amended its petition twice to assert theories of: (1) negligence by Tochihara; (2) vicarious liability of M-E for Tochihara's negligence, by virtue of Tochihara's status as the company's employee, agent, and principal; (3) breach of contract by M-E; and (4) breach of warranties by M-E. Each of these liability theories was predicated in part on the alleged professional errors or omissions by Tochihara that were addressed in Long's certificate.

The district court denied the motion to dismiss. This appeal ensued.

**ANALYSIS**

Tochihara and M-E bring four issues on appeal. In their first issue, appellants seek dismissal of the City's claims against M-E on the basis that Long's certificate of merit explicitly mentions only Tochihara and not M-E. In their second and third issues, appellants urge that the district court abused its discretion in failing to dismiss all of the City's claims against them because Long's certificate fails to demonstrate that he is qualified to testify to the opinions contained in his certificate. *See id.* § 150.002(a)-(b). Finally, in their fourth issue, appellants seek dismissal of the City's contract and warranty claims, asserting that Long's certificate did not supply the required "factual bases" for these claims. *See id.* § 150.002(b).

**Standard of review**

We review an order granting or denying a motion to dismiss under chapter 150 for abuse of discretion. *Benchmark Eng'g Corp. v. Sam Houston Race Park*, 316 S.W.3d 41, 44 (Tex. App.—Houston [14th Dist.] 2010, pet. dism'd). In general, a trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). However, because courts have "no 'discretion' in determining what the law is or applying the law to the facts," an "abuse of discretion" includes a misinterpretation or misapplication of the law. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 n.102 (Tex. 2008); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

The legal principles governing this case are found principally in chapter 150. We review matters of statutory construction de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In construing statutes, our primary objective is to give effect to the Legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*,

209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We also presume that the Legislature was aware of the background law and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). We further presume that the Legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d at 628, 635 (Tex. 2010); *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.).

**Long's qualifications**

We will begin with appellants' second and third issues, concerning Long's qualifications, which implicate all of the City's claims against appellants. The parties agree that the version of chapter 150 as amended in 2009 governs the City's suit, which was filed in 2010. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370, *amended by* Act of May 29, 2009, 81st Leg., R.S., ch. 789, §§ 2-4, 2009 Tex. Gen. Laws 1991, 1992 (now codified at Tex. Civ. Prac. & Rem. Code Ann. § 150.002). Section 150.002, subsection (a), requires, in relevant part:

In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party . . . licensed professional engineer . . . who:

(1)    is competent to testify;

(2)    holds the same professional license or registration as the defendant; and

(3)    is knowledgeable in the area of practice of the defendant and offers testimony based on the person's:

(A)  knowledge;

(B)  skill;

(C)  experience;

(D)  education;

(E)  training; and

(F)  practice.

Tex. Civ. Prac. & Rem. Code Ann. § 150.002 (a); *see also id.* § 150.001(a) (defining "licensed or registered professional" to include a "licensed professional engineer . . . or any firm in which such licensed or registered professional practices, including but not limited to a corporation, professional corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship, joint venture, or any other business entity").[1]   Further, subsection (b) of section 150.002 requires that "[t]he third-party . . . licensed professional engineer . . . shall be licensed or registered in this state and actively engaged in the practice of . . . engineering." *Id*. § 150.002(b).

---

[1] Because there have been no material intervening substantive changes in the statute, we have cited the current West volume for convenience.

In his certificate of merit, Long avers that he is "a professional engineer licensed as such in the State of Texas" who is "actively engaged in the practice of mechanical engineering." He adds that he "practice[s] in the design of heating, ventilating, air conditioning systems and plumbing systems, as does the defendant Allen Y. Tochihara (hereinafter the 'Engineer')." Long then explains that he has reviewed Tochihara's specifications and drawings for the project and visited the site and that his opinions are based upon his review of the documents and site visit. He then describes the project's HVAC system and, in eleven numbered paragraphs, identifies various perceived defects or deficiencies in the system and attributes them to claimed acts or omissions of "the Engineer," Tochihara:

1. The air cooled condensers have severe corrosion and will have to be replaced. A proper cleaning agent should have been specified to prevent this condition.

2. There have been several compressor failures and replacements which were caused by improper sequencing of the compressors. The Engineer should have described the proper sequencing in the specifications and pointed out the problem on his inspection.

3. The supply and return air fans have VFD drives that are not controlling to maintain a positive pressure in the building. This should have been caught by the Engineer.

4. Each of the two AC units is equipped with a 100% air economy cycle and was specified to activate whenever the ambient temperature drops below 75°F. This could cause condensation if it was raining outside at the time. The Engineer should have specified an "enthalpy" controller to prevent this from happening.

5. The HVAC controls are not working properly and the and the [sic] VAV terminal boxes are operating like a constant volume reheat system with the hot water coil heating up the cold duct air. This is a violation of the Energy Codes and the Engineer should have checked it out on his inspections.

6. The VAV terminal boxes are not calibrated and likewise not controlling. This should have been checked by the Engineer.

6

7. The air duct system is internally insulated with fiber board which is contaminated with dust and microbial growth in some places. This was an engineering design error as the liner should have been provided with a mylar or aluminum surface that was cleanable.

8. There are no filters on the inlet sides of the supply and return air fans nor the outside air intakes. The fans, motors, dampers, operators, etc., are exposed to dust and require constant cleaning. The Engineer should have required filters on the inlet sides of those components.

9. The controls are set up to turn off the air supply to some of the areas after work time and this produces an imbalance in maintaining a positive building pressure because the exhaust fans continue to run. The Engineer should have corrected this in his design.

10. The two main air units have a gas fired tube type heater down stream of the cooling coil. The heater tubes are open to the outdoors and moisture laden air migrates into the tubes and condenses which causes corrosion.

11. The DX cooling coils in the main AC units have split face coil rows with several expansion valves. When these expansion valves are closed off the refrigerant tubes act as by-passes and allow unconditioned air to enter the duct system and form condensation. This is a design error of the equipment that the Engineer should have caught.

At the conclusion of his certificate, Long signs his name "Bill M. Long, P.E." and provides an "Engineering license" number as well as an address for "Bill M. Long Consulting Engineer." Long also verifies his certificate, attesting that he is competent to testify and that the facts stated therein are within his personal knowledge and are true and correct.

In their second issue, appellants insist that Long's certificate fails to demonstrate that he practices in the same engineering subject area as Tochihara. *See id.* § 150.002(a)-(b). Although acknowledging that Long avers he "practice[s] in the design of heating, ventilating, air conditioning systems and plumbing systems, as does [Tochihara]," appellants dismiss this statement as "conclusory on its face" and "unsupported by any facts at all, let alone an explanation

7

regarding such missing facts." And such a "bare unsupported conclusion," appellants reason, is legally insufficient to satisfy chapter 150. In support of this contention, appellants cite two cases for the general proposition that expert conclusions without supporting facts are incompetent as evidence. *See Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008) (discussing "conclusory" expert trial testimony in context of rejecting a legal-sufficiency challenge); *McIntyre v. Ramirez*, 109 S.W.3d 741, 748-49 (Tex. 2003) ("conclusory" expert affidavit held incompetent to raise a fact issue precluding summary judgment). We disagree with appellants' contentions.

What chapter 150 requires, with respect to subject-area expertise, is that the affiant "*is* knowledgeable in the area of practice of the defendant." Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (emphasis added). Chapter 150 does not require that an affiant establish his or her knowledge through testimony that would be competent or admissible as evidence, or even that the affiant explicitly establish or address such knowledge within the face of the certificate—indeed, it imposes no particular requirements or limitations as to how the trial court ascertains whether the affiant possesses the requisite knowledge. *See Benchmark Eng'g Corp.*, 316 S.W.3d at 47 (observing, under materially identical provisions of 2005 version of chapter 150, that the "legislature did not include a requirement that statements in a certificate of merit must be competent as evidence"); *Durivage v. La Alhambra Condo. Ass'n*, No. 13-11-00324-CV, 2011 Tex. App. LEXIS 10030, at *6-7 (Tex. App.—Corpus Christi Dec. 21, 2011, pet. filed) (mem. op.) (under the 2009 version of chapter 150, concluding there was no authority "establishing that a certificate of merit must fail if its statements are conclusory, or even that it must comply with rules of evidence"); *Hardy v. Matter*, 350 S.W.3d 329, 333 (Tex. App.—San Antonio July 20, 2011, pet. dism'd) ("We

conclude the statute does not require the qualifications of the third-party architect to appear on the face of the initial affidavit; rather, the statute requires only that the affiant hold the specified qualifications. . . . The statute is silent as to how and when the third-party architect's qualifications must be established."); *cf. Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 495, 499 (Tex. App.—Corpus Christi 2009, no pet.) (holding that a certificate of merit failed under the 2005 statute where the certificate did not state or show that the affiant was practicing in the same area as the defendant and where the affiant's deposition testimony showed that he in fact practiced in a different area than the defendant).

In this case, the district court had before it Long's sworn certificate indicating that he is currently licensed by the State of Texas as a professional engineer, that he is "actively engaged in the practice of mechanical engineering," and that he "practice[s] in the design of heating, ventilating, air conditioning systems and plumbing systems." The district court also could have considered other facts tending to confirm that Long was knowledgeable concerning HVAC systems, most notably including his descriptions and analysis of eleven sets of identified problems in the building's HVAC system that he attributed to Tochihara. *See Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, No. 03-10-00805-CV, 2011 Tex. App. LEXIS 3063, at *6-7 (Tex. App.—Austin Apr. 20, 2011, pet. denied) (mem. op.) (determining that affiant's certificate demonstrated that he was knowledgeable in the requisite practice area despite not having said so explicitly; "[t]he statute does not require the affiant to *state* that he is knowledgeable in the same area of practice of the defendant, but rather that he be knowledgeable in that area" (emphasis in original)). On this record, we cannot conclude that the district court abused its discretion in determining that Long "is knowledgeable" in Tochihara's area of practice, as required by section 150.002,

subsection (a). *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a). We overrule appellants' second issue.

In their third issue, appellants complain that Long's certificate does not demonstrate within its "four corners" that his opinions are based upon his "knowledge," "skill," "experience," "education," "training," and "practice," another requirement of section 150.002, subsection (a). *See id.* § 150.002(a)(3). Similar to appellants' arguments regarding Long's knowledge, they urge us, in essence, to import into chapter 150 the standards governing the competence and admissibility of expert testimony. We can find no support for appellants' position in the statutory text, which instead reflects a legislative goal of requiring merely that plaintiffs make a threshold showing that their claims have merit, not that they necessarily marshal expert testimony that would be admissible at trial. *See Benchmark Eng'g Corp.*, 316 S.W.3d at 47 (contrasting statutory requirements for certificates of merit with standards governing admissibility of trial and summary-judgment evidence); *compare Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996) (explaining that Texas Rule of Evidence 702 serves to ensure that expert testimony provides "genuine assistance" to the fact finder) *with Criterium-Farrell Eng'rs v. Owens*, 248 S.W.3d 395, 399 (Tex. App.—Beaumont 2008, no pet.) ("[T]he purpose of the certificate of merit is to provide a basis for the trial court to conclude that the plaintiff's claims have merit.").

We cannot conclude that the district court abused its discretion in determining that Long's certificate demonstrated that his opinions were based on his knowledge, skill, experience, education, training, and practice as an engineer. The certificate reflects that in forming his opinions, Long read the project specifications and drawings, assessed whether the HVAC system complied with those documents, and determined, based on his training and experience, whether the

10

HVAC system, as actually installed, functioned properly as part of the project. This satisfies section 150.002, subsection (a). *See Elness Swenson Graham Architects, Inc.*, 2011 Tex. App. LEXIS 3063, at *7-8 (holding that a certificate of merit satisfied the statute where explanation and analysis demonstrated the affiant's knowledge, skill, experience, education, training, and practice as an architect); *Natex Corp. v. Paris Indep. Sch. Dist.*, 326 S.W.3d 728, 735 n.5 (Tex. App.—Texarkana 2010, pet. dism'd w.o.j.) (section 150.002, subsection (a), does not require that "the affidavit must slavishly track the wording of the statute or that the court hearing a challenge to the qualifications of the affiant must rely solely on the content of the affidavit. In other words, although the statute requires the affidavit to be made only by certain qualified persons, it is not required that the affidavit set out those qualifications"). We overrule appellants' third issue.

**Specific liability theories**

Appellants' two remaining issues seek dismissal of specific claims based on what they assert was noncompliance with subsection (b) of section 150.002. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(b). As amended in 2009, subsection (b) requires that the certificate:

> set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim.

*Id.*; *cf. S & P Consulting Eng'rs v. Baker*, 334 S.W.3d 390, 399-404 (Tex. App.—Austin 2011, no pet.) (en banc) (analyzing 2005 version of subsection (b)); *Howe-Baker Eng'rs Ltd. v. Enterprise Prods. Operating, LLC*, No. 01-09-01087-CV, 2011 Tex. App. LEXIS 3237, at *14-16 (Tex. App.—Houston [1st Dist.] Apr. 29, 2011, no pet.) (mem. op.) (same).

11

In their first issue, appellants urge that Long's certificate failed to comply with current subsection (b) with respect to the City's claims against M-E because it contains no express reference to that defendant, only to Tochihara, "the Engineer." In further support, appellants emphasize that chapter 150's definition of "licensed or registered professional" (i.e., the defendant concerning whom a certificate of merit must be filed, *see* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a)) includes not only a "licensed professional engineer," always a natural person,[2] but also "any firm in which such licensed . . . professional practices, including but not limited to a corporation, professional corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship, joint venture, or any other business entity." *Id.* § 150.001(a). Reading this definition together with section 150.002, subsection (b), appellants contend that the City was required to file a certificate addressing, by name, each of the "licensed or registered professionals" whose conduct is implicated in its suit, both Tochihara and M-E. Because Long's certificate undisputedly does not mention M-E, they insist that the district court abused its discretion in failing to dismiss the City's claims against that entity.

In their fourth issue, appellants similarly urge that Long failed to provide a "factual basis" for the City's contract and warranty theories of recovery against them. They emphasize that Long did not describe the contracts or warranties at issue or specify any particular provisions thereof that Tochihara or M-E allegedly breached. Appellants emphasize the first portion of subsection (b)

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.001(3) (West 2011) ("practice of engineering" has the meaning assigned by section 1001.003 of the occupations code); Tex. Occ. Code Ann. §§ 1001.002 (West 2004) (defining "[e]ngineer" as "a person licensed to engage in the practice of engineering in this state), .301-.404 (West 2004) (explaining licensing and seal requirements for engineers); *cf. id.* § 1001.405 (West 2004) (business entity registration requirements).

as it was amended in 2009.  The provision, again, begins by stating that the certificate must "set forth specifically for each theory of recovery for which damages are sought . . . ."  Appellants construe this opening phrase together with the subsequent references to "factual basis" of "each such claim" to require that the certificate set forth facts that would satisfy each element of any legal theory or claim on which the plaintiff intends to rely—including each element of the City's contract and warranty claims.  At least one of our sister courts, in a memorandum opinion, has found a similar argument persuasive.  *Durivage*, 2011 Tex. App. LEXIS 10030, at *9-12 (holding that a certificate of merit attesting to deficiencies in a project's roof failed to provide the factual basis for a breach-of-contract claim "because it does not state any facts regarding the existence or breach of any contract").

Although there is text within chapter 150 that might be read in isolation to support appellants' assertions, their position is ultimately refuted by language elsewhere within chapter 150.  *See Gonzalez*, 82 S.W.3d at 327 (we construe statutory language in context, not in isolation).  Read as a whole, section 150.002, subsection (b), reveals a core focus on ascertaining and verifying the existence of errors or omissions in the professional services provided by a "licensed or registered professional."  In particular, the Legislature has required that the certificate of merit "set forth specifically . . . the *negligence*, if any, or *other action*, *error*, or *omission* of the licensed or registered professional *in providing the professional service*."  Tex. Civ. Prac. & Rem. Code Ann. § 150.002(b) (emphases added).  And this statement of the defendant's acts or omissions "in providing the professional service" must "includ[e] *any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist* and *the factual basis for each such claim*."  *Id.* § 150.002(b) (emphases added).  While appellants ascribe broader implications to the concluding phrase "factual basis for each such claim," in context "*each such claim*" plainly refers to the

13

immediately preceding "any error or omission in providing advice, judgment, opinion or a similar professional skill *claimed to exist*" (emphases added), which is simply the information that a certificate must provide regarding errors or omissions in the professional services at issue. *See id.*

This core focus on errors and omissions in professional services is not altered by the first portion of subsection (b), which requires a certificate to provide these facts "for each theory of recovery for which damages are sought." *See id.* The effect of this phrase, which was amended to its current form in 2009, is to emphasize that the certificate must identify and verify the existence of any professional errors or omissions that are elements or operative facts under any legal theory on which the plaintiff intends to rely to recover damages. It thus served to eliminate any continuing debate or uncertainty as to whether prior versions of the certificate-of-merit requirement were triggered by damage claims predicated on professional errors or omissions that were couched in theories other than negligence. *See S & P Consulting Eng'rs*, 334 S.W.3d at 399-404. In this respect, the certificate-of-merit requirement is similar to the expert-report requirement under chapter 74 of the civil practice and remedies code—regardless of the legal theory or theories on which the plaintiff relies in seeking damages, he or she must file an expert report if the claim is predicated on facts characteristic of a "health care liability claim." *See Cardwell v. McDonald*, 356 S.W.3d 646, 653-54 (Tex. App.—Austin, no pet.).

This statutory focus on errors and omissions in the defendant's provision of professional services is consistent with, and further confirmed by, subsection (a) of section 150.002, which imposes the certificate-of-merit requirement only in proceedings seeking "damages arising out of the provision of professional services by a licensed or registered professional." *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (emphasis added). Likewise, subsection (a)'s standards

governing the qualifications of affiants who prepare certificates of merit, previously discussed, focus on the witness's knowledge of the defendant's *area of practice* and other bases for rendering an opinion about that subject. *See id.* Considered together, subsections (a) and (b) reflect legislative intent that if a plaintiff seeks damages under a liability theory that is predicated upon a licensed or registered professional's alleged errors or omissions in providing professional services, the plaintiff must obtain a certificate of merit verifying the existence of the errors or omissions in order to proceed under that theory. *See Criterium-Farrell Eng'rs*, 248 S.W.3d at 399.

Conversely, we find nothing in chapter 150 that would require that a certificate address operative facts other than the professional errors or omissions that are the focus of the statute. Properly construed, subsection (b) requires no more, *see* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(b), and subsection (a)'s witness-qualification requirements are consistent with this focus, *see id*. § 150.002(a). We cannot conclude that the Legislature intended to require affiants with expertise in such fields as engineering or architecture to opine regarding such far-afield subjects as contract construction or agency.

The City's live pleadings[3] allege that Tochihara committed a series of errors and omissions in designing and supervising the construction of the building's HVAC system. Predicated on these same alleged errors and omissions, the City sought damages against Tochihara in negligence, against M-E through the imposition of vicarious liability for Tochihara's negligence, and against M-E under breach-of-contract and breach-of-warranty theories. Although appellants attack

---

[3] Appellants suggest that the City is bound by its original petition. We disagree. In deciding a motion to dismiss under chapter 150, we consider the live pleadings at the time of the hearing on the motion to dismiss. *See Alvarado v. Oklahoma Sur. Co.*, 281 S.W.3d 38, 40 (Tex. App.—El Paso 2005, no pet.); *Martinez v. Battelle Mem'l Inst.*, 41 S.W.3d 685, 687 n.1 (Tex. App.—Amarillo 2001, no pet.).

15

Long's qualifications to render his opinions, they have not questioned that his certificate properly verifies the existence of the alleged errors and omissions, at least as they relate to the City's negligence theory of recovery against Tochihara.  On the City's live pleadings, we conclude that Long's certificate likewise satisfies chapter 150 with respect to the City's theories of recovery against M-E.  Accordingly, we overrule appellants' first and fourth issues.

## CONCLUSION

Having overruled each of appellants' issues, we affirm the district court's order denying their motion to dismiss.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   April 11, 2012

16